No. 23-16074

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

BETTY JOHNSON,
on behalf of herself and as a representative of a class of similarly situated persons,
*Plaintiff,*
and
ROSA A. CAMACHO,
Retiree and Member of the Settlement Class,
*Plaintiff-Appellant,*

v.

ARNOLD I. PALACIOS,
Governor of the Commonwealth of the Northern Mariana Islands,
*Defendant,*
and
NORTHERN MARIANA ISLANDS SETTLEMENT FUND,
*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern Mariana Islands
No. 1:09-cv-00023
Before the Honorable Frances M. Tydingco-Gatewood

## NMI SETTLEMENT FUND'S APPELLEE'S BRIEF

G. Patrick Civille
CIVILLE & TANG, PLLC
330 Hernan Cortez Ave., Suite 200
(671) 472-8868
pciville@civilletang.com
*Counsel for Defendant-Appellee*

Nicole M. Torres-Ripple
NMI SETTLEMENT FUND
P.O. Box 501247
Saipan, MP 96950
(670) 322-3863
*Counsel for Defendant-Appellee*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES .................................................................................iii

STATEMENT OF JURISDICTION.................................................................... 1

STATEMENT OF THE ISSUES......................................................................... 1

STATEMENT OF THE CASE ........................................................................... 2

    A. FACTUAL BACKGROUND.................................................................... 3

        1.  NMI Retirement Fund and COLA Legislation ............................... 3

        2.  NMI Settlement Fund ...................................................................... 7

    B. PROCEDURAL BACKGROUND ............................................................ 9

        1.  Administrative Appeal .................................................................... 9

        2.  Motion to Enforce – U.S. District Court for the NMI...................... 10

SUMMARY OF ARGUMENT ......................................................................... 12

STANDARD OF REVIEW ............................................................................... 12

ARGUMENT ................................................................................................... 13

I.     The District Court Correctly Concluded that COLA is not a
       "Full Benefit" or "Full Benefit Payment" Under the NMI
       Constitution or the Retirement Fund Act as it Existed on
       June 26, 2013 per the Terms of the Settlement Agreement. ................. 13

       A. The District Court Correctly Concluded that COLA Is
          Not an "Accrued Benefit" under Article III, Section 20(a)
          of the NMI Constitution. ................................................................. 14

i

B. The District Court Correctly Concluded that Section 8358 is Applicable to Camacho. ....................................................... 17

CONCLUSION .................................................................................... 23

CERTIFICATE OF COMPLIANCE .................................................... 24

CERTIFICATE OF SERVICE FOR ELECTRONIC FILING ............................ 25

SUPPLEMENTAL ADDENDUM ....................................................... 26

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Bartlett v. Cameron*, 216 P.3d 889, 892 (N.M. 2013) .......................................15, 21

*Camacho v. NMI Retirement Fund*, 1 NMI 362 (N.M.I. Sept. 21, 1990) ..........2, 14

*Cody v. Northern Mariana Islands Retirement Fund*, 2011 MP 16............10, 15, 18

*In re Volkswagen "Clean Diesel" Mktg.*, 975 F.3d 770 (9th Cir. 2020)..................12

*Isla Dev. Prop., Inc. v. Jang*, 2017 MP 13................................................................19

*Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) .......................................12, 18

*Justus v. State*, 336 P.3d 202, 209 (Colo. 2014) .....................................................21

*Pangelinan v. N. Mar. I. Retirement Fund*, 2009 MP 12 .......................................14

**Statutes**

1 CMC § 8358.......................................................................................................6, 7, 14

1 CMC § 8358(1)(a).....................................................................................................5

1 CMC § 8358(a) .......................................................................................................20

1 CMC § 8358(b) .......................................................................................................20

1 CMC § 8358(d) .......................................................................................................21

NMI P.L. 1-43 § 1 (1980) ..........................................................................................3

NMI P.L. 6-17 § 8333.................................................................................................5

NMI P.L. 6-17 § 8334(e) (1989)................................................................................4

NMI P.L. 6-17 § 83813 (1989) ..................................................................................4

**Statutes (cont'd)**                                         **Page(s)**

NMI P.L. 7-39 § 1 (1991) ...........................................................................5

NMI P.L. 7-39 § 3 (1991) ...........................................................................5

NMI P.L. 8-31 § 1 (1993) ...........................................................................5

NMI P.L. 13-60 §6(f) (2003) ......................................................................6

**Constitutional Provisions**

NMI Const. art. III § 20(a) ..........................................................................4

## STATEMENT OF JURISDICTION

The district court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, and exclusive jurisdiction of "matters relating to the enforcement, effectuation, administration, interpretation, . . . or modification of" the Settlement Agreement. *See* Addendum to Appellant's Opening Brief, Part II (DktEntry: 8-3) ("Addendum II") at 243 (Final J. Approving Class Action Settlement, at 6 (Oct. 23, 2013)); *see also*, Addendum II at 221 (Final Am. Stipulation and Agreement of Settlement, at 34 (Aug. 6, 2013). This Court has appellate jurisdiction under 28 U.S.C. § 1291.

Appellee, the Northern Mariana Islands Settlement Fund, agrees with the Statement of Jurisdiction in Camacho's Opening Brief that the Order appealed from was timely appealed under Federal Rules of Appellate Procedure Rule 4(a)(1)(A) as the Order was entered on July 12, 2023, and Camacho filed her Notice of Appeal on August 2, 2023, within 30 days of the Order.

## STATEMENT OF THE ISSUES

1. Whether the district court correctly determined that COLA is not an "accrued benefit" under Article III, Section 20(a) of the NMI Constitution and therefore not one of the "Full Benefits" or "Full Benefit Payments" required to be paid under the Settlement Agreement.

2. Whether the district court correctly concluded that 1 CMC § 8358 is applicable to Camacho and COLA is discretionary such that it is not one

of the "Full Benefits" or "Full Benefit Payments" required to be paid under the Settlement Agreement.

All constitutional provisions and statutes relevant to this appeal are contained in the Addendum, docketed as DktEntry: 8-2 and 8-3, filed with Appellant's Opening Brief. The following CNMI Supreme Court case relevant to this appeal is contained in the Supplemental Addendum attached to the Settlement Fund's Appellee's Brief ("Supp. Addendum"): *Camacho v. NMI Retirement Fund*, 1 NMI 362 (N.M.I. Sept. 21, 1990).

## STATEMENT OF THE CASE

This case involves the interpretation of the Final Amended Stipulation and Agreement of Settlement ("Settlement Agreement") entered in the underlying class action lawsuit, *Johnson v. Inos*, No. 1:09-cv-00023 (D. N. Mar. I. Aug. 6, 2013), by and between the Government of the Commonwealth of the Northern Mariana Islands ("NMI") and the Settlement Class consisting of NMI Government retirees that were members of the then nearly-insolvent NMI Retirement Fund. Under the Settlement Agreement, the NMI Government must make annual payments to the Settlement Fund, and, in exchange, the Settlement Class Members receive 75% of the "Full Benefits" or "Full Benefit Payments" that they would have been entitled to under the NMI Constitution and certain specified NMI laws in effect on June 26, 2013.

The Appellant, Rosa Camacho ("Camacho"), contends that she is entitled to more than the amount the Settlement Fund determined was due to her under the Settlement Agreement. Specifically, as she maintained in the district court, Camacho argues here that: (1) she is entitled to a Cost of Living Allowance ("COLA") at a rate of not less than two percent per annum because COLA is an "accrued benefit" protected by the NMI Constitution and therefore one of the "Full Benefits" or "Full Benefit Payments" under the Settlement Agreement; and (2) 1 CMC § 8358 ("Section 8358"), the operative COLA law in effect on June 26, 2013 under the Settlement Agreement, does not apply to Camacho's benefits.

The district court properly ruled that COLA is not an "accrued benefit" such that it falls within the definition of "Full Benefits" or "Full Benefit Payments" under the Settlement Agreement, and Section 8358 is applicable to Camacho.

For the reasons discussed herein, this Court should affirm the district court's Order.

## A. FACTUAL BACKGROUND

### 1. NMI Retirement Fund and COLA Legislation

The NMI's original retirement system was established in 1980 ("1980 Retirement Fund Act"), providing annuities and other benefits for government employees, their widows, and dependents. Addendum to Appellant's Opening Brief, Part I (DktEntry: 8-2 (Oct. 26, 2023)) ("Addendum I") at 2, (NMI P.L. 1-43 § 1

3

(1980)). Camacho became a member of the NMI retirement system when it was established in 1980. Appellant's Excerpts of Record (DktEntry: 9 (Oct. 26, 2023)) ("ER") at 2 (Order Granting Mot. to Enforce at 2 (July 12, 2023)). COLA did not exist at the inception of the NMI's retirement system.

The NMI Constitution enshrined accrued benefits derived from the retirement system in 1985, providing: "Membership in an employee retirement system of the Commonwealth shall constitute a contractual relationship. Accrued benefits of this system shall be neither diminished nor impaired." Addendum I at 1 (NMI Const. art. III § 20(a)). The NMI Constitution makes no mention of COLA, and the retirement system had yet to provide for COLA.

Almost ten years after its establishment and Camacho's membership, the NMI Legislature revamped its retirement system, which included a two-percent cost of living increase: "Members in receipt of service retirement annuity shall be entitled to a 2 percent cost of living increase commencing on the member's retirement date, provided the member is at least 62 years of age. The cost of living increase shall be computed utilizing simple interest." Addendum I at 71-72 (NMI P.L. 6-17 § 8334(e) (1989)).[1]

---

[1] COLA would not be retroactively applied or calculated: "All cost of living increases provided by this act shall not be retroactively applied or calculated but shall commence on the effective date hereof." Addendum I at 128 (NMI P.L. 6-17 § 83813 (1989)).

The COLA provision was amended on October 11, 1991, reflecting much of the same language but changing the age at which COLA is available, from 62 to 55: "Members in receipt of service retirement annuity shall be entitled to a 2 percent cost of living increase commencing on the anniversary of the member's retirement date, provided the member is at least 55 years of age. The cost of living increase shall be computed utilizing simple interest." Addendum I at 150 (NMI P.L. 7-39 § 3 (1991)). A separate provision required that COLA could only be paid when appropriated by the NMI Government. Addendum I at 148 (1 CMC § 8358(1)(a), as amended by NMI P.L. 7-39 § 1, stating "The cost of living allowance shall only be paid upon appropriation of the required funding by the Government").

Camacho retired as a class II member approximately two months later, on December 15, 1991.[2] ER at 2 (Order Granting Mot. to Enforce).

The COLA provision was again amended in 1993 but much of the language remained the same: "Class I and II members in receipt of a service retirement annuity shall be provided an annual cost of living increase. The annuity amount will automatically increase on the first day of the quarter following approval by the Board of Trustees." Addendum I at 158 (NMI P.L. 8-31 § 1 (1993)). However, the COLA

---

[2] Public Law 6-17 requires all active employees, including Appellant Camacho, to be members of the NMI retirement system. Section 8333 of P.L. 6-17 sets forth the eligibility requirements to retire as a class II member: one must be either at least 60 years of age or have 25 years of vesting service to retire.

rate was changed, from two percent, to that as was used by the U.S. Social Security System and not less than two percent. *Id*. In effect, a retiree could receive more than two percent, and never less than that.

COLA would be amended once more by Public Law 13-60 in 2003, which removed the previous mandate that COLA be provided at a rate of no less than two-percent. *See* Addendum I at 171 (NMI P.L. 13-60 §6(f) (2003)). Furthermore, the COLA increase percentage would "be applied to the previous year's annuity paid in equal semimonthly increments." *See id.*

Camacho became 55 years old on March 4, 2006. Appellant's Opening Br. at 7 (DktEntry: 8-1 (Oct. 26, 2023)). She received COLA payments from 2007 through 2010. ER at 35 (NMISF Record of COLA Calculations), 36 (NMISF Record of Payment Calculations for Camacho).

In 2011, the NMI Legislature amended the COLA provision for the last time. NMI Public Law 17-32 amended the COLA provision to read what would be the law on June 26, 2013—the operative date under the Settlement Agreement ("2013 Retirement Fund Act"). Codified at 1 CMC § 8358 ("Section 8358"), the COLA provision in Public Law 17-32 states:

> (a) Eligible class I and class II members in receipt of a service retirement or disability annuity and eligible surviving spouses may be provided an annual cost of living increase. The annuity amount will automatically increase on the first day of the quarter following approval by the board.

(b) The cost of living increase will be set by the board each year, using as a guidelines, the rate used by the United States of America Social Security System for its beneficiaries. The cost of living increase percentage will be applied to the first thirty-thousand dollars of the previous year's annuity amount paid in equal semimonthly increments. This figure shall not be adjusted.

. . .

(d) The board shall pay as a COLA . . . only such amount as the Legislature appropriates for this purpose each year.

1 CMC § 8358, ER at 16.

### 2. NMI Settlement Fund

In 2009, a class action was initiated in the U.S. District Court for the NMI against the NMI Government asserting claims based on the Government's failure to pay annual contributions to the NMI retirement system and to pay on a judgment obtained against the Government for failing to pay legally mandated contributions. Addendum II at 188-189 (Settlement Agreement Recitals, § 1A). Settlement was reached, and a Settlement Agreement was approved by the district court on September 30, 2013. Addendum II at 238-243 (Final J. Approving Class Action Settlement (Oct. 23, 2013)). The Settlement Agreement sought to resolve "all existing disputes and claims that relate to or arise out of the CNMI and its Autonomous Agencies' failure to properly fund the CNMI Fund . . . while preserving the Settlement Class's constitutional rights to accrued retirement benefits that are not

diminished or impaired." Appendix II at 190 (Settlement Agreement, Recitals §1D). Thus, the Settlement Class "agree[d] to a revision of their benefits . . . while preserving their constitutional right to the benefits[.]" *Id*.

To effectuate the intent of the Settlement Agreement, the Settlement Fund was established, and all assets, rights, and liabilities of the NMI Retirement Fund were transferred and assigned to the NMI Settlement Fund. Addendum II at 203-204 (Settlement Agreement § 8).

Under the Settlement Agreement, Settlement Class Members agreed "that they will be entitled to only 75% of their Full Benefits annually until the Settlement Fund has sufficient assets to pay more and remain actuarially sound while paying more over its life and providing prudently for the costs and future costs of operating the Settlement Fund." Addendum II at 203 (Settlement Agreement § 7). The NMI Government agreed to make minimum annual payments ("MAP") to the Settlement Fund, as determined by an independent actuary, in an amount sufficient to "pay 75% of Settlement Class Members' "Full Benefit Payments."  Appendix II at 197-198 (Settlement Agreement § 4.0).  The MAP has decreased every year after 2018.  *Id*.

The Settlement Agreement provides:

"Full Benefit Payments" or "Full Benefits" means benefit payments in the amount defined by 1 CMC § 8301 et seq. (excluding any changes by P.L. 17-82 or P.L. 18-02) as those laws existed on June 26, 2013, or guaranteed by N. Mar. I. Const. art. II, § 20(a) as it existed on June 26, 2013.

Addendum II at 193 (Settlement Agreement § 1.13). The laws as it existed on June 26, 2013, include 1 CMC § 8358.

It is undisputed that Camacho is a Settlement Class Member.

## B. PROCEDURAL BACKGROUND

### 1. Administrative Appeal

The Settlement Fund issued a Notice of Overpayment to Camacho on March 23, 2016, notifying her that she received an overpayment of benefits because her pension was improperly adjusted to include accumulated overtime / compensatory time as service credit instead of vesting service credit pursuant to NMI law. ER at 2 (Order Granting Mot. to Enforce, at 2). COLA payments were not specifically identified as part of the overpayment of benefits. Camacho timely appealed the Notice of Overpayment through the Settlement Fund's administrative appeal process. ER at 3 (Order Granting Mot. to Enforce, at 3). Camacho did not include as part of her appeal, and did not raise as an issue, any claim related to the fact that she had not received COLA at a rate of not less than two percent since 2009. The matter was sent to mediation but attempts to resolve the dispute were unsuccessful. *Id*.

During the hearing officer stage, in early 2022—over a decade after Camacho (and all retirees) stopped receiving COLA—Camacho raised for the *first time* her claim to COLA payments—asserting she had been underpaid because she had not received any COLA payments from 2009 through the present. *Id*. She therefore

sought "a determination of her rights relating to the COLA payments through the Administrative Appeal Process." *Id*.

    2. <u>Motion to Enforce – U.S. District Court for the NMI</u>

Although the matter was fully briefed in the administrative proceedings, the Settlement Fund filed a motion to enforce with the district court to enjoin Camacho from reaching an interpretation of the Settlement Agreement outside the district court, and to determine whether COLA payments are included within the definition of "Full Benefits" or "Full Benefit Payments" pursuant to the Settlement Agreement. *Id*.

Finding that the Settlement Agreement's definition of "Full Benefits is "silent with regard to COLA payments," the district court examined whether COLA was a Full Benefit provided under the 2013 Retirement Fund Act or Article III § 20 of the NMI Constitution per the terms of the Settlement Agreement. *Id*., ER at 5. The district court rendered two rulings: one based on the 1980 Retirement Fund Act, and one based on the laws as they existed on June 26, 2013. *Id*., ER at 6,7.

Based on NMI Supreme Court caselaw, the district court found that retirement benefits vest at the time of membership in the retirement system—not at the time of actual retirement. *Id*., ER at 6 (citing *Cody v. NMI Retirement Fund*, 2011 MP 16 ¶ 33). Therefore, any COLA benefits must have existed at the time Camacho became a member of the retirement system. *Id*. The district court found that Camacho's

pension benefits vested on October 1, 1980 pursuant to the 1980 Retirement Fund Act, which triggered Camacho's membership into the retirement system. However, the district court concluded, because the 1980 Retirement Fund Act did not provide COLA, and such a benefit did not exist until May 7, 1989 as authorized by NMI Public Law 6-17, Camacho was not entitled to COLA as an accrued benefit. *Id*. ("When Ms. Camacho became a member of the [Retirement Fund] on October 1, 1980 . . . COLA payments did not yet exist. . . . Thus, any adjustments to retirement benefits, such as COLA payments, that were authorized after Ms. Camacho's retirement vested on October 1, 1980, are not 'accrued benefits.'"). Thus, because COLA benefits did not exist pursuant to the 1980 Retirement Fund Act or Article III, § 20 of the NMI Constitution, COLA benefits are not accrued benefits. *See id*. ("The court concludes that as of June 26, 2013, COLA payments were not guaranteed benefit payments under either the Retirement Fund Act or the NMI Constitution.").

Second, the district court agreed with the Settlement Fund's position that Section 8358 applied to Camacho. As such, because COLA payments are discretionary and subject to legislative appropriation under Section 8358, COLA payments are not guaranteed by the Retirement Fund Act as it existed in 2013. *Id*. Buttressing this finding that the Settlement Agreement did not contemplate COLA as part of the settlement class's "Full Benefits," the district court found that requiring annual COLA payments "would go against the primary purpose of the Settlement

Agreement, which is 'to insure that retirees who are part of this Agreement will always get paid at least 75% of their benefits[.]'" *Id*., ER at 7.[3]

## SUMMARY OF ARGUMENT

This Court should affirm the district court's order.

I.    The district court correctly determined that COLA is not an accrued benefit under Article III, Section 20(a) of the NMI Constitution such that it is a "Full Benefit Payments" or "Full Benefits" as required under the Settlement Agreement.

II.    The district court correctly concluded that 1 CMC § 8358, which governs discretionary COLA, applies to Camacho.

## STANDARD OF REVIEW

The enforcement of a settlement agreement is reviewed for abuse of discretion. *See In re Volkswagen "Clean Diesel" Mktg.*, 975 F.3d 770, 775 (9th Cir. 2020). The interpretation of a settlement agreement, including the analysis of language in the agreement, is subject to *de novo* review. *See Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) (citations omitted).

---

[3] The district court declined to address whether COLA payments were released under the Settlement Agreement. *Id*., ER at 7. Camacho does not challenge this ruling.

**ARGUMENT**

I. **The District Court Correctly Concluded that COLA is not a "Full Benefit" or "Full Benefit Payment" Under the NMI Constitution or the Retirement Fund Act as it Existed on June 26, 2013 per the Terms of the Settlement Agreement.**

Camacho argues, without any basis, that because COLA is an accrued benefit that cannot be impaired or diminished pursuant to Article III § 20 of the NMI Constitution, COLA must also be a "Full Benefit" or "Full Benefit Payment" as defined by the Settlement Agreement. Appellant's Opening Br. at 10. She maintains that her contractual relationship with the Retirement Fund began in 1980 when she became a member of the retirement system, *id*. at 5, which therein entitled her to accrued benefits. This contractual relationship, she contends, was amended by three subsequent public laws entitling her to COLA as an accrued benefit at a rate of not less than two percent. *Id*. at 10. Thus, she argues, her amended contractual relationship triggered a constitutionally protected right to COLA as an accrued benefit that cannot be impaired or diminished.

Camacho's claims are groundless and should be rejected. COLA is not a constitutionally protected accrued benefit because Camacho became a member nearly a decade before COLA was implemented into the NMI retirement system. Specifically, COLA was neither provided for in the 1980 Retirement Fund Act nor contemplated by the 1985 by amendments to the NMI Constitution. In this regard, then, it is not a Full Benefit under the Settlement Agreement. Secondly, under the

13

laws as it existed on June 26, 2013 pursuant to the Settlement Agreement, COLA is not a mandatory benefit, but discretionary. *See* 1 CMC § 8358. In this regard, too, it is not a Full Benefit under the Settlement Agreement. Thus, the district court correctly concluded that COLA is not a Full Benefit under the Settlement Agreement because (1) COLA is not an accrued benefit pursuant to Article III, § 20 of the NMI Constitution, and (2) COLA provisions are discretionary under the Retirement Fund Act as it existed on June 26, 2013.

### A. The District Court Correctly Concluded that COLA Is Not an "Accrued Benefit" under Article III, Section 20(a) of the NMI Constitution.

Under Article III, Section 20(a) of the NMI Constitution: "Membership in an employee retirement system of the Commonwealth shall constitute a contractual relationship. Accrued benefits of this system shall be neither diminished nor impaired." As with contracts, the plain meaning of constitutional language applies. *Pangelinan v. N. Mar. I. Retirement Fund*, 2009 MP 12 ¶ 18; *Camacho v. NMI Retirement Fund*, 1 NMI 362, 368 (1990), enclosed with Supp. Addendum.

Under its plain language, § 20 does not specifically provide for COLA nor does it define "accrued benefit." The original 1980 Retirement Fund Act did not include COLA. In 1985, the NMI Constitution was amended to include the protections afforded to the accrued benefits by a retirement system. The NMI Constitution made no mention of COLA, and COLA still had not yet been included as part of the retirement scheme. It wasn't until 1989—nine years after the original

14

establishment of the retirement system and four years after the constitutional amendment protecting retirement benefits was put in place—was COLA established. This therefore "calls into question the breadth" of the protections guaranteed by the NMI Constitution. *Bartlett v. Cameron*, 316 P.3d 889, 892 (N.M. 2013) (examining whether retirement benefits encompasses COLA subject to constitutional protection).

In *Cody v. Northern Mariana Islands Retirement Fund*, 2011 MP 16, the NMI Supreme Court analyzed whether a reduction in disability retirement benefits could be retroactively applied. The NMI Supreme Court concluded in the negative, finding support in § 20 of the NMI Constitution. In its discussion of § 20, the NMI Supreme Court determined that an accrued benefit exists at the time of vesting; "accrued" became synonymous with "vested." *See id.* at ¶ 32. "In the Commonwealth, persons acquire an accrued or vested right to disability retirement benefits by virtue of their membership in the Fund." *Id*. at ¶ 33 (collecting cases). Therefore, "accrued benefits" vest upon *membership* in the system. *See id.* ¶¶ 32-33. The court concluded, in that case, that a reduction in disability retirement benefits could not be retroactively applied to members whose rights had already vested prior to the reduction, i.e., their membership in the retirement system vested their accrued benefits which could not be "impaired or diminished." *See id.*

Here, Camacho's entitlement to "accrued benefits" vested at the time of her membership—when COLA did not exist. It is undisputed that the Retirement Fund Act was amended in 1989—nearly a decade after Camacho's membership in the retirement system—to authorize COLA payments pursuant to Public Law 6-17. As Camacho acknowledges, she became a member of the NMI Retirement Fund on October 1, 1980, pursuant to Public Law 1-43, and a decade before any implementation of COLA. Thus, when Camacho became a member of the NMI Retirement Fund, her benefits immediately vested or accrued as of that date and did not include COLA. Fatal to Camacho's position is the undisputed fact that the constitutional protections Camacho relies on did not exist at the time she became a member. Because Camacho's benefits vested on October 1, 1980 when she became a member, and COLA did not exist at that time, COLA is not an "accrued benefit" due to Camacho.

The District Court therefore correctly concluded that COLA was not a guaranteed benefit under the NMI Constitution. There can be no unconstitutional impairment or diminishment of COLA where COLA is not an accrued benefit, and therefore, COLA is not a Full Benefit as contemplated in the Settlement Agreement.

**B. The District Court Correctly Concluded that Section 8358 is Applicable to Camacho.**

Finally, Camacho asserts that she is entitled to mandatory COLA. Opening Br. at 11. It is unclear, as with her other arguments, under what basis she makes this claim. She specifically argues that laws passed after she became a member and retired cannot be applied to her. *Id*. at 13. To do so would diminish and impair her rights to accrued benefits under the NMI Constitution. *Id*.

Camacho argues that 1 CMC § 8358 does not apply to her because it was amended by NMI Public Law 17-32, which was effective on February 16, 2011, and Camacho was a member of the retirement fund prior to that effective date. Appellant's Opening Br. at 10. This argument should be rejected. The district court correctly concluded that 1 CMC § 8358 is applicable to Camacho and contains a discretionary COLA provision.[4]

First, Camacho's logic is flawed. She argues that Section 8358 does not apply to her because it was enacted after she became a member of the retirement fund. *Id*. But, under this logic, COLA does not apply to her at all, because, as established

---

[4] Camacho suggests that COLA is not discretionary. Appellant's Opening Br. at 10. Although unclear, it seems this is premised in COLA as implemented in the prior NMI public laws that she relies on and not Section 8358 (which Camacho claims does not apply to her). With respect to Section 8358, it does not appear that Camacho disputes that Section 8358 has been revised to function discretionarily.

17

above, COLA was not a benefit at the time Camacho became a member either. She cannot have it both ways. Camacho's reliance on *Cody v. NMIRF*, 2011 MP 16, *id.*, does not help her and supports the Settlement Fund's position. *Cody* establishes that Camacho is entitled to the benefits existing at the time she became a member of the retirement fund. In *Cody*, the NMI Supreme Court determined that the retiree was entitled to the disability annuity rate in P.L. 1-43, the law in effect at the time of the member's employment with the NMI Government, not the reduced rate, which was enacted over a decade after membership in the NMI Retirement Fund. *See Cody*, 2001 MP 16 ¶ 34.

Second, Camacho, as a member of the Settlement Class, is bound by the terms of the Settlement Agreement. A settlement agreement resolving a legal dispute constitutes a contract and enforceability is governed by contract law. *See Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989). "[C]ourts are not permitted to modify settlement terms or in any manner to rewrite agreements reached by parties." *Id.* at 758. "Each party agrees to 'extinguish those legal rights it sought to enforce through litigation in exchange for those rights secured by the contract.'" *Id.* (citations omitted). "[S]ettlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *Id.* (citation omitted). In interpreting a contractual provision, the plain language of the contract is considered, and the

18

agreement is reviewed as a whole. *See Isla Dev. Prop., Inc. v. Jang*, 2017 MP 13 ¶¶ 8-9.

The Settlement Agreement defines "Full Benefit Payments" and "Full Benefits" as follows:

> "Full Benefit Payments" or "Full Benefits" means benefit payments in the amount defined by 1 CMC § 8301 et seq. (excluding any changes by P.L. 17-82 or P.L. 18-02) as those laws existed on June 26, 2013, or guaranteed by N. Mar. I. Const. art. II, 20 (a) as it existed in June 26, 2013.

Addendum II at 193 (Settlement Agreement § 1.13). Thus, the Settlement Agreement defines "Full Benefit" to mean the 2013 Retirement Fund Act. Camacho is bound by this definition, which includes 1 CMC § 8358 to the extent applicable to her as it existed on June 26, 2013. Because COLA was not enacted when Camacho became a member of the retirement fund, to the extent that the COLA laws apply in determining Camacho's benefits at all, the applicable statute would be the COLA laws as amended as of June 26, 2013, *to wit*, NMI P.L. 6-17 § 8334(e) allowing COLA for the first time in 1989, as amended by NMI P.L. 7-39 § 3 enacted effective October 11, 1991, as further amended by NMI P.L. 8-31 § 1 enacted in 1993, as further amended by NMI P.L. 13-60 §6(f) enacted in 2003, and, finally, as further amended by NMI Public Law 17-32 which enacted the current version of 1 CMC § 8358 in 2011. As such, the current version of Section 8358 applies to

Camacho. There is no basis to conclude that any specific prior version of the COLA law applies to Camacho, nor has Camacho cited any authority to that effect.

Having established that COLA is applicable to Camacho, COLA's discretionary function precludes it from constituting a "Full Benefit" as contemplated by the Settlement Agreement. Camacho does not argue or dispute that COLA is discretionary under 1 CMC § 8358. Therefore, the analysis should end there, and the district court's order should be affirmed. Nonetheless, Camacho's general statement (without citation or analysis) that COLA is not discretionary, Appellant's Opening Br. at 10, is wrong. The district court correctly concluded that the statutory language of the 2013 Retirement Fund Act (i.e., the Retirement Fund Act as it existed on June 26, 2013) identifies COLA as a discretionary benefit, subject to two essential preconditions. *See* ER at 5-6 (Order at 5-6).

1 CMC § 8358(a) provides: "Eligible class I and class II members in a receipt of a service retirement or disability annuity and eligible surviving spouses *may* be provided an annual cost of living increase." 1 CMC § 8358(a), ER at 15 (emphasis added). Thus, at the outset, the plain reading of this provision, by use of the permissive word "may," clearly shows that it is a discretionary benefit.

Additionally, as the District Court determined, there are two essential preconditions before COLA can be paid: (1) the board must approve the amount, and (2) the legislature must appropriate funds for COLA. *See* 1 CMC § 8358(b), ER at

16 ("The cost of living increase will be set by the board each year, using as a guideline, the rate used by the United States of America Social Security System for its beneficiaries."), 1 CMC § 8358(d), ER at 16 ("The board shall pay as a COLA . . . *only such amount* as the Legislature appropriates for this purpose each year"). Because COLA is conditioned on these two additional requirements, COLA payments are not guaranteed benefits under the 2013 Retirement Fund Act but are rather *discretionary*, to be approved by the board and subject to legislative appropriation. *See generally Bartlett v. Cameron*, 316 P.3d 889, 896 (N.M. 2013) (finding that COLA is not a property right and holding that "in the absence of any contrary indication from our Legislature, any future cost-of-living adjustment to a retirement benefit is merely a year-to-year expectation that, until paid, does not create a property right under the Constitution."); *Justus v. State*, 336 P.3d 202, 209 (Colo. 2014) (recognizing that "[b]y its very nature a statutory cost of living adjustment is a periodic exercise of legislative discretion that takes account of changing economic conditions in the state and/or nation" and finding that the Legislature did not create a contract right to COLA). The Settlement Agreement defines "Full Benefit" with reference to "benefit payments." Addendum II at 193 (Settlement Agreement § 1.13). "Benefit payments" necessarily include only those payments to which retirees are entitled under applicable law; any other interpretation would be non-sensical. Therefore, because COLA is a discretionary payment subject

21

to legislative appropriation, retirees are not entitled to these payments, and therefore COLA is not a "Full Benefit" under the Settlement Agreement.

Given that Section 8358 is applicable to Appellant, as previously discussed, any COLA she receives is discretionary. COLA has not been appropriated or paid to any retirees since 2010. Furthermore, neither approval of COLA nor legislative appropriation for COLA has occurred since the Settlement Agreement was entered in *Johnson*. Appellant cannot be entitled to a discretionary benefit that has not been made available by the Legislature through discretionary appropriation.

This interpretation is also consistent with the purpose of the Settlement Agreement to ensure continued retirement payments to retirees for the prolonged life of the Fund. Section 4 of the Settlement Agreement provides: "After FY2015, the CNMI agrees to make minimum annual payments to the Settlement Fund sufficient to enable the Settlement Fund to pay 75% of Class Members' Full Benefits each year for the Settlement Fund's expected life as determined by an independent actuary[.]" Addendum II at 197 (Settlement Agreement § 4). The district court correctly found that requiring the Settlement Fund "to make COLA payments annually to the Class Members would go against the primary purpose of the Settlement Agreement, which is 'to insure that retirees who are part of this Agreement will always get paid at least 75% of their benefits[.]" ER at 7 (Order, at 7 (citing Settlement Agreement at ¶ I.D)).

## CONCLUSION

For the foregoing reasons, the Court should affirm the district court's order confirming that "Full Benefits" and "Full Benefit Payments" in the Settlement Agreement do not include COLA payments and is not a required payment under the Settlement Agreement unless appropriated by the NMI legislature.

.

Respectfully submitted,

  */s/ G. Patrick Civille*

G. Patrick Civille
Nicole M. Torres-Ripple
*Counsel for Defendant-Appellee*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-16074

I am the attorney or self-represented party.

**This brief contains** | 5,332 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ G. Patrick Civille | **Date** | 1/18/2024

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Form 8    24    *Rev. 12/01/22*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form15instructions.pdf

**9th Cir. Case Number(s)** | 23-16074

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

NMI SETTLEMENT FUND'S APPELLEE'S BRIEF

**Signature** | /s/ G. Patrick Civille | **Date** | 1/17/2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

# SUPPLEMENTAL ADDENDUM

CLERK OF COURT
SUPREME COURT. CNMI
FILED

90 SEP 21 P4: 47

BY: _Susan Dlg. Jos_

## FOR PUBLICATION

### IN THE SUPREME COURT
### OF THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| LUIS S. CAMACHO, | ) | APPEAL NO. 90-007 |
| | ) | CIVIL ACTION NO. 88-741 |
| Plaintiff/Appellant, | ) | |
| | ) | |
| vs. | ) | OPINION |
| | ) | |
| NORTHERN MARIANAS RETIREMENT | ) | |
| FUND, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |

Argued July 30, 1990

Counsel for Plaintiff/Appellant:    Douglas F. Cushnie
P.O. Box 949
Saipan, MP 96950

Counsel for Defendant/Appellee:    Marybeth Herald
Bergsma & Herald
Caller Box PPP 654
Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

BORJA, Justice:

### PROCEDURAL AND FACTUAL BACKGROUND

This is an appeal from a grant of summary judgment in favor of the NMI Retirement Fund ("Fund") in an action involving an application for additional public employment retirement credit. In re Appeal of Camacho, 3 CR 615 (C.T.C. 1989).

364

The appellant, Luis S. Camacho ("Camacho"), is a former government employee who retired in 1982 after 20 years and 18 days of service. He receives benefits from the Fund for that period of service.

In this action, Camacho contends that he is entitled to credit for an additional five years of service under the 19th Amendment to the NMI Constitution ("19th Amendment"), which was ratified in 1986.

Camacho applied for the credit in 1988. His request was denied by the Fund's administrator. Camacho appealed the decision to the Fund's hearing officer, who considered his claim on stipulated facts.[1] The hearing officer affirmed the administrator's decision.

Camacho then appealed the hearing officer's decision to the Fund's Board of Trustees--again, on stipulated facts. The Board affirmed the hearing officer.

Pursuant to 1 CMC § 9112,[2] Camacho then appealed to the Commonwealth Trial Court (now Superior Court) which, as noted

---

[1]The stipulated facts were: (1) Camacho's period of government service; (2) that he attained this period of service prior to the passage and ratification of the 19th Amendment; and (3) that the Fund approved his application to receive benefits. In addition, the hearing officer found that the Fund approved Camacho's application prior to the effective date of the 19th Amendment. Camacho does not dispute this finding.

[2]Subsection (b) of this statute provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action, is entitled to judicial review of the action within 30 days thereafter in the Commonwealth Trial Court."

above, upheld the Fund's decision in a summary judgment proceeding.

Camacho contends that the Fund and the trial court erred in denying his request for credit under the 19th Amendment.

### The 19th Amendment

The 19th Amendment, which was adopted at the Second (1985) NMI Constitutional Convention, provides, in part:

Retirement System.

. . .

> b) An employee who has acquired not less than twenty years of creditable service under the Commonwealth retirement system shall be credited an additional five years and shall be eligible to retire.

. . .

The amendment became NMI Const. Art. III, Sec. 20 after its ratification by the voters in 1986.

### STANDARD OF REVIEW

We review the actions of NMI administrative agencies according to the dictates of the Commonwealth Administrative Procedure Act ("APA"), 1 CMC §§ 9101 et seq. The standards for judicial review of agency action are set forth in 1 CMC § 9112(f). Since we review agency action on the identical basis as the trial court, we are not required to accord any particular deference to the trial court's conclusions. Our review of the trial court's review of agency action is de novo. In re San Nicolas, No. 90-008 (N.M.I. Sept. 5,

366

1990).[3]

## ANALYSIS

### I.

The first issue raised in this appeal is whether the 19th Amendment may be interpreted to permit a person who retired from government service prior its ratification to receive the additional five year credit according to its terms.

Initially, we must consider the basis for our review of this question and other issues in this appeal.

The APA statute concerning judicial review provides, in part:

> To the extent necessary to decision and when presented, the reviewing court shall <u>decide all relevant questions of law</u>, <u>interpret constitutional</u> and statutory <u>provisions</u>, and determine the meaning or applicability of the terms of an agency action.

1 CMC § 9112(f) (emphasis added). The APA judicial review standards enable the reviewing court to compel or set aside agency action for several reasons.

Though Camacho does not specify the applicable standard in our review of this first issue (or the other issues),[4] he apparently argues that the Fund's decision should be set aside because it is "not in accordance with law." 1 CMC § 9112(f)(2)(A).

_____

[3]We also note that a grant of summary judgment is reviewed <u>de novo</u>. If there is no genuine issue of material fact, the analysis shifts to whether the substantive law was correctly applied. <u>Borja v. Rangamar</u>, No. 89-009 (N.M.I. Sept. 17, 1990).

[4]R.App.Pro. 28(o) requires the appellant to identify the applicable standard of review, with citations.

"The general principles which apply to statutory construction are equally applicable in cases of constitutional construction." Pangelinan v. CNMI, 2 CR 1148, 1161 (D.N.M.I. App. Div. 1987). "A basic principle of construction is that language must be given its plain meaning." Tudela v. MPLC, No. 90-011, slip op. at 5 (N.M.I. June 7, 1990). We will apply the plain, commonly understood meaning of constitutional language "unless there is evidence that a contrary meaning was intended." Pangelinan, 2 CR at 1161.

The pertinent language in the 19th Amendment refers to "[a]n employee" (not both past and present employees) who, having acquired not less than 20 years of creditable service, "shall be credited an additional five years and shall be eligible to retire." (Emphasis added.) The language is plainly applicable only to employees who had not yet retired when the amendment was ratified in 1986. It does not permit an employee who retired before the amendment to "retire" again to take advantage of its terms. Likewise, the language does not support Camacho's contention that it should (in effect) be applied retroactively to enable employees who retired prior to the effective date to take advantage of its terms. There is no indication that it was intended to apply retroactively. Cf. Torvinen v. Rollins, 560 P.2d 915, 917 (Nev. 1977) ("the amendment is void of any terms indicating the legislature or electorate intended retrospective application").

"The presumption is that a constitutional amendment is to be given only prospective application unless the intention to make it

retrospective in operation clearly appears from its terms." People v. Elliot, 525 P.2d 457, 458 (Colo. 1974) (citing U.S. Supreme Court, Colorado, Arizona, Florida, Hawaii, Idaho, Louisiana, New York and South Dakota precedent). See also State v. Wacek, 703 P.2d 296 (Utah 1985), and Torvinen, supra. Camacho has failed to rebut this presumption.

However, even if the pertinent language was ambiguous, the legislative history of the 19th Amendment[5] confirms the apparent intention that it be applied prospectively:

> [This] feature is intended to entice those employees who have 20 years or more of qualified service to retire early from public employment. This is consistent with the concern that the number of employees in the public sector must be reduced within the next seven years.

Recommendation No. 66 at 1, Committee on Governmental Institutions, Journal of the Second NMI Constitutional Convention (herafter "Journal"), 33rd Day, July 20, 1985. Discussion among the convention delegates regarding the provision also confirms the plain meaning:

> DELEGATE KING: I was thinking about the existing retirees. What will happen to those people that are now getting 20 years retirement benefits. Are they going to fall under this section?
>
> DELEGATE MAFNAS: No. They will not be covered. This will affect only those who are currently on board. Those who have retired will not be affected.

---

[5] If necessary, in construing legislation the courts may consult legislative history and the interpretation of an administering agency. FunBus Systems, Inc. v. Public Utilities Commission, 801 F.2d 1120 (9th Cir. 1986).

Journal at 696, 33rd Day, July 20, 1985.

## II.

The second issue is whether the denial of the five-year credit to Camacho and other former NMI government employees who retired before the effective date of the 19th Amendment violates the equal protection clause of the Fourteenth Amendment to the U.S. Constitution (hereafter "equal protection clause").

Camacho apparently contends that the Fund's decision should be set aside because it is "[c]ontrary to constitutional right, power, privilege, or immunity." 1 CMC § 9112(f)(2)(B).

This contention lacks merit.

Because public employment is not a fundamental right under equal protection analysis, Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), and because the right to receive public employee retirement benefits is not a fundamental right, United States Railroad Retirement Board v. Fritz, 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980), a "rational basis" review standard applies.

According to the Journal, the pertinent provision of the 19th Amendment was adopted to save the government money by enticing qualified employees to retire early.[6] The provision's

---

[6]See, e.g., Recommendation No. 66 at 2, Committee on Governmental Institutions:

> A total of 100 employees already have acquired from 20 to 24 years of creditable service. Approximately 80

classification scheme bears a rational relationship to this legitimate government purpose. It does not violate the equal protection clause.

### III.

The third issue is whether the trial court erred in not considering an issue that had not been raised in the administrative proceeding.

During the pendency of the administrative proceeding, P.L. 6-5 was enacted. The act prohibits the NMI government from employing persons who simultaneously receive NMI retirement benefits; it also prevents former retirees from improving their retirement status after returning to government service.[7] Camacho argues that the court should consider the effect of P.L. 6-5 upon his case. He contends that it effectively prevents him from returning to government service to build retirement credits. Although his brief is somewhat unclear, Camacho apparently argues that P.L. 6-5, in

---

> employees have more than 25 years of qualified service. Assuming that all the 180 employees elect to retire early, the Commonwealth Government would realize approximately $5,200,000.00 savings.

Journal, 33rd Day, July 20, 1985.

[7] P.L. 6-5 has since been implicitly superseded by P.L. 6-41, which provides, in part, that the benefits of NMI government retirees who return to government service will subsequently be recomputed based on the additional service and wages earned. The act clarifies that retirees may return to government service under certain circumstances, provided that their benefits are terminated for the duration of the employment.

conjunction with the 19th Amendment, also violates the equal protection clause.

The trial court declined to consider this claim, and so do we.

"Generally, an appellate court may not take into consideration arguments raised for the first time on appeal . . .." CNMI v. Micronesian Insurance Underwriters, Inc., 3 CR 731, 738 (D.N.M.I. App. Div. 1989). There are three narrow exceptions to this rule: (1) a new theory or issue arises because of a change in the law while the appeal was pending; (2) the issue is only one of law not relying on any factual record; or (3) plain error occurred and an injustice might otherwise result if the appellate court does not consider the issue. Brown v. Civil Service Commission, 818 F.2d 706 (9th Cir. 1987).

Camacho apparently seeks to raise this new issue under either the first or second exceptions noted above. He notes that the P.L. 6-5 was enacted during the pendency of the administrative proceeding. Further, "[a]lthough not considered below, since the effect of P.L. 6-5 is essentially a legal issue in its entirety, this court, like the trial court[,] is requested to consider the effect of the law in light of the [Fund's] denial of [19th Amendment] benefits . . .." Appellant's brief at 11.

The Fund argues that any desire that Camacho has to return to government employment has nothing to do with the issue of eligibility for the five year credit, and that his claim that he cannot obtain government employment because of the restrictive

application of the law is speculative.

We agree with the Fund. Apart from our concern as to whether Camacho may properly raise this issue for the first time on appeal, it is not pertinent to the issue concerning the application of the 19th Amendment. It is also speculative. Cf. Bauer v. McCoy, 1 CR 248, 259 (D.N.M.I. 1982) ("[a] ripe dispute is one which has matured sufficiently for judicial resolution").

### IV.

The final issue is whether the Fund committed prejudicial error by not affording Camacho a reasonable opportunity to submit (1) proposed findings and conclusions to the hearing officer before he issued his decision and (2) exceptions to the decision after its issuance, as required by the Commonwealth Administrative Procedure Act ("APA").

According to the APA:

> Before a recommended initial order or decision, or an order or decision on agency review of an order or decision, the parties are entitled to a reasonable opportunity to submit for the consideration of the persons participating in the decision:
>
> (1) Proposed findings and conclusions;
>
> (2) Exceptions to the order or decision or recommended order or decision; and
>
> (3) Supporting reasons for the exceptions or proposed findings and conclusions.

1 CMC § 9110(b).

Camacho apparently contends that the Fund's alleged failure to

373

afford him a reasonable opportunity to submit proposals and exceptions requires that the agency's decision be set aside because it was not rendered "in accordance with law" and/or because it was made "[w]ithout observance of procedure required by law." 1 CMC § 9112(f)(2)(A) and (B).

Another provision in the pertinent APA statute requires reviewing courts to "take due account . . . of the rule of prejudicial error" in determining whether to set aside agency action. 1 CMC § 9112(f)(2).

We recently considered a claim somewhat similar to Camacho's in In re San Nicolas, supra, which was also an appeal from a quasi-judicial administrative proceeding. In that case, a Civil Service Commission hearing officer had not issued a recommended decision. Following the dictates of 1 CMC § 9112(f)(2), we considered whether the error was prejudicial. Holding that it was, we set aside the agency's ruling. San Nicolas, slip op. at 8-10.

A significant consideration in San Nicolas related to the many factual matters in dispute. The agency's failure to afford the aggrieved party an opportunity to submit proposed findings and conclusions and to later submit exceptions to the hearing officer's recommended decision was prejudicial:

> In an administrative hearing where a hearing examiner has to listen to a multitude of disputed facts, review a plethora of documents, over a period of many days, it would be immeasurably helpful if the parties submitted their thoughts on what the findings of fact and conclusions of law should be. Who can say that the hearing officer would not have found a proposal submitted

by [the aggrieved party] to be valid and persuasive, and therefore, capable of influencing his decision?

Further,

In a situation where there is an abundance of evidence, with few facts being uncontested, who can say that the [review] board would not have been persuaded by the exceptions submitted?

San Nicolas, slip op. at 8-9.

In contrast to San Nicolas, the hearing officer in this proceeding did issue a decision. Beyond that fact, a more significant difference is that the hearing officer did not have to consider disputed factual matters--Camacho and the Fund stipulated on the pertinent facts. At that stage, the sole question was whether the 19th Amendment should be given retroactive effect. (The claim that the Plan's interpretation of the 19th Amendment violated the equal protection clause was initially raised in the appeal before the Plan's Board of Trustees.) These are clearly legal questions, freely reviewable at each link in the chain of judicial appeal. San Nicolas, supra. Thus, unlike an appeal in which findings of fact are in dispute, any failure to comply with the required procedures in an appeal solely involving disputed legal conclusions is arguably less prejudicial. In that circumstance, the agency review body is not obligated to show deference to the hearing officer's conclusions, nor is the reviewing court later obligated to accord deference to the agency's

375

conclusions.[8]

Most significantly, however, Camacho has not demonstrated prejudice. "The doctrine of harmless error is applicable to review of administrative decisions." <u>San Nicolas</u>, slip op. at 5 (quoting C. Koch, Jr. <u>Administrative Law and Practice</u> § 9.8 (1985, 1987 supplement)). It is always incumbent upon the aggrieved party to demonstrate the prejudicial effect of procedural irregularities in administrative proceedings. <u>NLRB v. Health Tec Division/San Francisco</u>, 566 F.2d 1367 (9th Cir. 1978). Camacho has not met that burden in this appeal.

The order granting summary judgment is hereby AFFIRMED.


Jose S. Dela Cruz
Chief Justice


Ramon G. Villagomez
Associate Justice


Jesus C. Borja
Associate Justice

---

[8]<u>Cf</u>. 73A C.J.S. <u>Public Administrative Law and Procedure</u>, §§ 170, 230 (1983).